UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SONIX CARRIERS INC.,<br><br>                              Plaintiff,<br><br>-against-<br><br>PEGASUS TRUCKING, LLC, d/b/a FALLAS STORES, AND d/b/a FALLAS STORES AND INVENTORY CONTROL & DC OPERATIONS, AND MICHAEL FALLAS,<br><br>                              Defendants. | Civil Action No.: 1:22-cv-9439<br><br>**COMPLAINT**<br><br>ECF Case<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Sonix Carriers Inc. ("Sonix" or "Plaintiff") by and through its attorneys, BRUCK LLP, as and for its Complaint herein, alleges the following, upon information and belief, against Defendants Pegasus Trucking, LLC ("Pegasus"), as well as the Pegasus' various operating names, including d/b/a Fallas Stores ("FS" or "Stores"), and d/b/a and Inventory Control & DC Operations ("FSICDCO") (together, the "DBAs," and with Pegasus, the "Company Defendants"), and Michael Fallas ("Michael" or "Individual Defendant"), who owns and controls Pegasus (the Company Defendants together with the Individual Defendant, the "Defendants," and the Defendants together with Plaintiff, collectively, the "Parties").

## PRELIMINARY STATEMENT

1. Plaintiff brings this action seeking monetary damages (both compensatory and punitive), declaratory relief and other affirmative and equitable relief including a finding by the Court for an account stated in favor of Plaintiff and against Defendants, for the multiple and varied damages caused by the nonpayment of the approximately 129 invoices, breaches of contracts, the unlawful, malicious, willful, and fraudulent acts (collectively the "Unlawful Acts") committed by

Michael and the Defendants, designed, planned, orchestrated, and carried out by Michael, to the significant detriment and damage to Sonix, and to the unjust enrichment of Defendants, including and especially Michael.

2.     Plaintiff hereby seeks legal redress against Defendants for the Unlawful Acts, which have already caused and continues to cause Plaintiff significant financial, reputational, and other damage, all of which could have and would have been prevented, but for the Unlawful Acts of Defendants.

3.     Defendants' fraud was perpetuated by Defendants, by and through Michael and others appointed and controlled by him, under his direct, supervision and control, with their intentional efforts to trick, deceive or otherwise convince Plaintiff that Michael would personally guarantee payments for trucking services provided by Plaintiff across the United States (the "Trucking Services"), by making various material misrepresentations to Plaintiff to induce Plaintiff to provide the trucking services, upon which Plaintiff objectively reasonably relied, to Michael and the Company Defendants.

4.     Defendants induced Plaintiff to tender the Trucking Services by (i) falsely representing that Michael, individually and personally, would be liable for payments, (ii) presenting false, misleading, inaccurate and/or false or bogus documents to Plaintiff concerning the operations and financial health of the Company Defendants, (iii) concealing key information and affirmatively misrepresenting the veracity of the business and financial health of the Company Defendants, including the relationship by and among the Defendants, especially concerning the DBAs, (iv) outright lying, continuously and repeatedly, using guile, professional jargon, promises of prompt payment for additional provision of Trucking Services, and (v) making other financial

promises, business guarantees, and payment warranties, intended to induce Plaintiff into providing additional and continuing the Trucking Services.

5. Due to the unlawful acts of Defendant and the resulting damages suffered by Plaintiff, it now seeks to recover:(i) payments for Tucking Services provided to the defendants; (ii) an amount to cover all liabilities incurred by Plaintiff as a result of Defendants' fraudulent conduct; (iii) pre- and post- judgment interest on all claims; (iv) reasonable attorneys' fees and costs where available; and (v) such other and further relief as this Court deems necessary.

## JURISDICTION AND VENUE

6. The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between Plaintiff and each of the Defendants, including and especially between Plaintiff and each of (i) Michael, the Individual Defendant, and (ii) Pegasus, an LLC, in which Michael is the sole member, where Plaintiff is incorporated in the State of New Jersey with its corporate offices located in New York State, and each of the Defendants, Michael and Pegasus, is, respectively, a citizen of the State of California and organized under the laws of the State of Delaware, and the amount in controversy between the Parties exceeds $75,000.00.

7. Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391 because Plaintiff (i) is located in this District, (ii) a substantial part of the events or omissions giving rise to Plaintiff's claims herein occurred in this Judicial District, and (iii) Defendants have conducted business in this Judicial District, including but not limited to telephone calls, email transmissions, mailings and comprising the representations, promises, negotiations, orders and contracts concerning the Services, upon which this action is founded upon, were directed to or occurred in this Judicial District.

## PARTIES

*Plaintiff/Sonix*

8. Sonix is a corporation duly organized and validly existing under the laws of the State of New Jersey.

9. Sonix is headquartered in this Judicial District, with its offices located at 9 Perlman Drive, Suite 108, Spring Valley, New York 10977.

10. Sonix is owned by a sole shareholder, Joseph Gutman ("Gutman"), an individual, residing in the State of New York

11. Sonix maintains a trucking garage located at 9 Steel Court, Roseland, New Jersey 07068.

12. Sonix owns its own trucks which it uses to deliver goods around the country.

13. Sonix, in addition to using its own trucks to deliver goods around the country also, depending on the specifics of the scope, size and location of the needed trucking and delivery services, also engages in brokering its business through the hiring of other trucking companies to perform the delivery services on its behalf.

14. Sonix, when it enters into such brokered trucking arrangements with other trucking companies, does so by entering into term sheet and invoicing agreements, *i.e.,* contracts, with such companies.

*Defendant/Pegasus*

15. Pegasus is a limited liability company duly organized and validly under the laws of the State of Delaware and registered in the State of California.

16. Pegasus is headquartered in California, with its corporate offices located at 15001 S Figueroa Street, Gardena, California 90248.

*Defendants/DBAs*

17. Upon information and belief, and as Plaintiff was informed by Michael, by authorized representatives of Michael, as well as by corporate executives of Pegasus, Michael and Pegasus regularly used and relied upon various operating names, including the DBAs and ICDCO, alternately, alternatively, and concomitantly.

18. Upon information and belief, Michael created, devised, and insisted upon the use of the DBAs.

*Defendant/Michael*

19. Upon information and belief, Michael is an individual who resides at 607 Foothill Road, Beverly Hills, California 90210.

20. Upon information and belief, Michael is the sole member and owner of Pegasus.

21. Upon information and belief, Michael directs, controls and supervises all activities of Pegasus, including all transactions at all related to or at all arising from any activity of Pegasus and of the DBAs.

22. Upon information and belief, Michael insisted on the use of the DBAs to, for among other reasons, connive, deceive, defraud, avoid, evade, and otherwise ignore and flout his own and Pegasus' financial obligations, to both individuals and business entities, for both goods purchases and services rendered.

23. Upon information and belief, Michael regularly, to encourage, convince, induce, and otherwise to assure Pegasus and the DBAs the goods and services required and desired, personally guaranteed timely payment on invoices and other financial obligations incurred by the Company Defendants.

## RELEVANT FACTUAL BACKGROUND BETWEEN
## PLAINTIFF AND DEFENDANTS

*Sonix's Business and its Introduction to and Concerns with Michael and Defendants*

24. Sonix, when it enters into brokered trucking arrangements, prepays for those trucking expenses, and then get reimbursed from its customers, plus the customer pays an additional agreed upon amount constituting Sonix's profit.

25. When Sonix enters into a particular brokered truck arrangement for a specific job, in order to service one of its customers, Sonix informs that customer of such arrangement.

26. In or about May 2021, a sales representative at Sonix named Jacob Fallas ("Jacob"), introduced Michael and the Company Defendants to Plaintiff.

27. Upon information and belief Michael and Jacob are second cousins.

28. Upon information and belief, Michael used his influence, status, wealth, familial connection to Jacob to create and foster the relationship with Plaintiff and, specifically, with Gutman.

29. Upon information and belief, over the recent years Michael has been known to be involved in any number of companies, owned and controlled by him, specifically and exclusively, that filed for bankruptcy protection or otherwise actually went bankrupt.

30. Gutman became aware of Michael's history with bankruptcy prior to Sonix formalizing or commencing any business relationship with Michael and Pegasus.

31. Gutman raised concerns with representatives of Pegasus, including but not limited to Michael, about Pegasus's ability and other wherewithal and disposition to timely pay Sonix for the contemplated trucking services.

***Michael Reassures Gutman and Sonix, Induces the Business Relationship with Sonix, and Personally Guarantees Payments to Sonix***

32. Michael, directly and through authorized representatives, specifically to Gutman as well as through Jacob, repeatedly and with specificity, assured and guaranteed to Plaintiff that he, himself, personally and individually, would be responsible for any and all payments owed by Pegasus to Sonix, and pleaded with Gutman and Sonix authorized personnel not to worry or at all be concerned about any past business history of Michael's.

33. Michael and other representatives at Pegasus also informed Gutman and other representatives and Sonix, including but not limited to Jacob, that Pegasus was financially sound, and that Pegasus was a successful and growing entity, over which Michael was in full control and the sole decision-maker.

34. Gutman and Plaintiff were reassured, solely because of Michael's and Pegasus's promises, commitments, and statements and Sonix, ultimately relied upon Michael's personal involvement and guarantees concerning any agreement entered into by Sonix and Pegasus and by Sonix and any other entity owned and controlled

35. Gutman, relying upon Michael's relationship with Jacob, personal guarantees, and continued inducement for Sonix to formalize a business relationship with Pegasus, and after informing Michael that Sonix would be brokering the trucking services in order to service Pegasus, finally agreed to commence business with Michael and Pegasus.

***Sonix Contracts with Michael and Defendants and Michael Requests Payments to AKAs and then to Pegasus***

36. Michael, Pegasus, and the AKAs contracted with Plaintiff for the shipment of goods from the Company Defendants' distributions centers located in both (i) Gardena, California and (ii) Arlington, Texas to Defendants retail stores located across the States of (iii) Texas, (iv) New Mexico, (v) Arizona, and (vi) California.

7

37.     All of the services provided by Sonix to Michael, Pegasus and the other Company Defendants involved trucking goods and delivering shipments from one or more of Defendant's distribution centers, warehouses, and other locations to one or more of the others.

38.     In the beginning of the relationship, during the period of time from in or about May 2021 through in or about July 2021, Michael requested that Sonix invoice one of the AKAs, FS which, itself carried colloquial business name of "Michael Fallas," also an AKA.

39.     Then, Michael and his representatives informed Gutman and his representatives at Sonix to address all Sonix invoices to Inventory Control and DC Operations, although Sonix was instructed to use the very same e-mail and mailing address that it had previously used in connection with the transmission of the prior invoices.

40.     Again, Michael and his representatives made express and detailed assurances and promises that Michael would personally be responsible for all invoices in connect with Sonix's trucking services.

41.     Sonix performed all trucking services timely, fully and completely and Sonix via Gutman, Jacob and/or others at Sonix timely invoiced FS, then Pegasus and Michael as well in accordance with the express agreement between Michael and Pegasus and Sonix.

42.     None of the Defendants, not Michael nor any of the Company Defendants ever complained about any of the invoices, *i.e.*, not about the scope, content, dates, or amounts on any of the invoices, with, ultimately, nearly 200 total invoices sent by Sonix to Michael and the other Defendants, over the course of their approximately 10 months working relationship.

***Problems with Payments from Defendants and Michael Doubles-Down with Promises, Guarantees, and Reassurances to Sonix***

43. Defendants' payments on the early invoices were made in full and timely.

44. Gutman and Sonix felt comforted and reassured that their collective concerns and fears about not getting paid were addressed, mitigated, and alleviated.

45. Michael and Pegasus increased the demand for the trucking services from Sonix, thereby increasing Sonix's costs in connection with its prepayment and financial obligations in connection with the brokered arrangements it made with other companies, all of which was well-known and fully clear to Michael and others at Pegasus.

46. In or about November 2021, the payments from the Defendants ceased being timely, raising concerns for Sonix, including and especially due to the increased number and amounts of services, and especially as none of the Defendant raised any issue or registered any complaints about any of the trucking services or with any of the invoices sent by Sonix to Michael and the other Defendants.

47. When Plaintiff again raised its concerns and fears over the late payments, Michael and Pegasus repeatedly reassured Plaintiff that Michael was personally if not solely the one behind all orders, instructions, shipping demands, and that he was good for the money, will personally pay if the other Defendants cannot or simply do not, and that neither Gutman nor Sonix have any reason to worry at all. When Gutman or any of his representative raised concerns of fears of not getting paid, Michael then began threatening Sonix that if Sonix stopped providing trucking services, Michael will not pay the open balance on the already received and overdue invoices.

48. Again, Gutman and Sonix explicitly and specifically relied upon Michael's promises and guarantees to pay all invoices, capitulated to Michael's constant pleas for Gutman

9

and Sonix to not cease providing the trucing services. Gutman and Sonix relented and acquiesced to Michael's requests and Sonix continued with the trucking services, unabated and uninterrupted.

*Michael and Defendants Make Excuses, Create Ruses, and Bully and Intimidate Sonix into Reducing Amounts Owed and Continuing Providing Trucking Services*

49. Then, suddenly, and wholly unwarranted, in or about October 2021, Michael and Pegasus claimed that Sonix was one day late in delivering three shipments and, abruptly stopped using Sonix's trucking services.

50. Upon information and belief, such excuse, tactic, and unilateral and drastic action by Defendants against Sonix, designed, orchestrated, and insisted upon by Michael, was nothing more than a ruse, coverup and excuse, employed solely to cover, deflect if not erase Michael's, Pegasus's and the other Defendants' multiple and repeated breaches of the contract with Sonix.

51. Plaintiff did not want to argue with Defendants and, in wanting to continue its business relationship with Defendants, unilaterally agreed, in fact offered unsolicited, to discount the claimed late shipments.

52. Again, as previously, none of the Defendants, not Michael and not any of the other Defendants, took issue, pointed out any discrepancy, or otherwise complained about any of the content of any of the already delivered invoices from Sonix, including not about any of the amounts charged and detailed provided by Sonix for payment by Defendants.

53. However, it was thereafter that Defendants started making payments on the invoices past the agreed upon due dates, sometimes making only partial payments, in succession and with some regularity, again, concerning Gutman very significantly.

54. As if proactively stirred to intimidate and bully Sonix and with Michael well-aware of Sonix's already and continuing financial obligations to the various companies with which Sonix had contracted for the brokered trucking services, Defendants, at Michael's urging and insistence,

requested an unwarranted, unearned, and undeserved, one-time $50,000 discount and write-off, for Defendants to bring the then significant outstanding balance owed to Sonix current within the week.

55. Again, as previously, and despite the out-of-the-blue demand by Michael and Pegasus for a blanket $50,000 discount, none of the Defendants, not Michael, not Pegasus and not any of the AKAs took issue, pointed out any discrepancy, or otherwise complained about any of the content of any of the already delivered invoices from Sonix, including not about any of the amounts charged and detailed provided by Sonix for payment by Defendants. Reluctantly, Sonix agreed to the demanded discount provided that the balances of all outstanding invoices would be paid by the end of that week.

*Michael and Defendants Fail to Pay Outstanding Invoices and Remain Resolute to Not Pay*

56. Neither Michael nor any of the other Defendants paid the balance, not by the end of that week, nor at any time since until this very day.

57. Eventually, Plaintiff came to the realization that Michael was not trustworthy and did not intend on making the promised, owed, and required payments to Sonix.

58. Plaintiff, having no choice and believing it had been tricked, lied to, and defrauded, ended its business relationship with Michael and the other Defendants.

59. When Plaintiff demanded payment, Defendants notified Plaintiff that Michael was reorganizing Pegasus and restructuring and renaming the other Company Defendants, the AKAs, and that neither Michael nor any of the Company Defendants intended on paying any of the outstanding invoices.

60. Plaintiff through counsel sent a demand letter and Defendants again communicated that they were reorganizing and that they had no intention of paying the outstanding invoices.

11

61. In all, Plaintiff provided trucking services to and for Michael and the Company Defendants over the course of approximately 10 months, from in or about May 2021 through in or about March 2022.

62. Upon information and belief, Sonix made a total of 195 separate shipments/deliveries for Defendants, of which approximately 120 shipments/deliveries have not been paid, *i.e.,* Michael and the other Defendants have paid for only 38.5% of the shipments/deliveries.

63. Plaintiff's trucking services to the Defendants amounted to $1,187,465 of which only $434,615 has been paid to date.

64. Michael and the other Defendants have an open balance of $752,850 on the unpaid invoices, *i.e.,* Michael and the other Defendants have paid only 36.6% of the total outstanding monies owed to Sonix on the invoices (sent by Sonix and received and accepted by Michael and the other Defendants without any objection).

**Sonix Forced to Cease Providing Trucking Services Given the Defendants Continued Failures to Pay as Promised, Breaches of Contracts, Unilateral Changes in Terms of Service, and Oppressive and Extortionary Demands for Additional Trucking Services**

65. The last trucking services provided by Sonix occurred on March 9, 2022, at which point $832,500 was owed by Defendants to Sonix, all of which was personally guaranteed by Michael.

66. Nonetheless, despite the huge balance, Michael demanded additional trucking services from Sonix on pain of not keeping his promise to pay off the received, outstanding, and owed invoices, at a rate and frequency of $50,000 per week.

67. Gutman determined and decided that Somix could simply not continue providing trucking services to Defendants, for any number of reasons, especially, and well-known to Michael, Sonix was brokering the trucking services, *i.e.,* fees paid up front by Sonix to other

12

trucking companies, and it became clear that Michael and the Defendants were holding Gutman and Sonix commercially hostage, forcing Gutman to dig a deeper hole in which Sonix was falling, weekly if not daily.

68. Defendants made their last payment to Sonix, one in the amount of $24,650, on March 30, 2022, upon information and belief directed and approved of by Michael, leaving an outstanding balance on received, outstanding, and owed invoices of $752,850.

69. In between March 9 and March 30, 2022, and thereafter, Michael, on no fewer than seven occasions requested continued and additional trucking services from Sonix.

70. Gutman and his representatives explained to Michael and his representatives, in no uncertain terms, that Sonix would only provide trucking services on COD (cash on delivery) terms for all "new" trucking services, together with full compliance of the prior "agreement" (breached many times by Michael and the other Defendants)—forced upon Sonix by Michael and the other Defendants—that Sonix be paid $50,000 weekly (as Michael promised) on all already received, outstanding, and owed invoices.

71. Michael and his representatives either ignored, rejected or otherwise never accepted these necessary terms in order for Sonix to responsibly, credibly, and fairly provided continued and additional trucking services.

72. Ultimately, and with neither Michael nor any of the other Defendants, nor any of their respective representatives ever complaining, protesting or otherwise complaining about any of the approximately 120 invoices, already received, outstanding, and owed to Sonix, and with no additional payments received by Sonix (since March 30, 2022), Sonix, on or about May 20, 2022 through its legal representative, sent a demand letter to Michael and teg other Defendants insisting on immediate payment on all the received, outstanding, and owed invoices.

73. Eventually, Michael, upon information and belief, sought to extricate himself personally from any financial obligation to Sonix and directed counsel for himself and the other Defendants to deny his personal responsibility to Sonix and to avoid, evade, delay and misdirect in efforts to deter, discourage, and otherwise convince Sonix and its counsel to forfeit, disclaim, and otherwise "give up" on exercising its rights and claims against Defendants and seek to recover the significant damages it has suffered, repeatedly, compounded and significantly, due to the proximate if not direct actions of Michael, his representatives, and the other Defendants, entities managed, directed and controlled, singlehandedly, by Michael.

## COUNT I
## ACCOUNT STATED
### (Defendants)

74. Plaintiff repeats, reiterates and realleges each and every allegation contained in the preceding paragraphs, 1 through 73, as if each of them were set forth fully herein.

75. A true and accurate account of Plaintiff's charges was rendered to Defendants on a regular basis and retained without objection.

76. Sonix presented an account to Defendants with each of the invoices sent to Defendants and with an account accumulating and become due to Sonix by Defendants, individually and collectively, with each and every invoice,

77. Defendants accepted each and every invoice as true, accurate and correct and never took issue, protested or complained about any of the scope, content, amounts, detail, or any of the charges contained within any invoice.

78. Defendants, Michael, Pegasus, and the other Company Defendants. Agreed to and promised to pay the stated amounts in the invoices.

79. To date, none of the Defendants have ever objected to any of the invoices and, at this point, as of the date of the commencement of this action, the outstanding invoices had been sent by Sonix and received by Defendants more than 10 months ago.

80. Michael and the Company Defendants promised to pay the stated sums contained within each of the outstanding invoices, *i.e.,* approximately 120 invoices, amounts the Parties negotiated and agreed upon as the amounts due, just as in the same manner and amounts that Defendants had paid, covering approximately 75 invoices (making up the total of approximately 195 invoices submitted by Sonix to Defendants over the course of the working relationship between the Parties during which Sonix provided the trucking services to Defendants).

81. An account has therefore been stated between Plaintiff and Defendants in the amount of $752,850, no part of which has been paid despite due and repeated demand by Sonix.

82. Based on the foregoing, Defendants are indebted to the Plaintiff in the amount of $752,850, with prejudgment interest thereon from no later than March 9, 2022.

## COUNT II
## BREACH OF CONTRACT
**(Defendants)**

83. Plaintiff repeats, reiterates and realleges each and every allegation contained in the preceding paragraphs, 1 through 82, as if each of them were set forth fully herein

84. Plaintiff and the Defendants negotiated, agreed upon and entered into a serious of agreements, prior to each trucking shipment.

85. The agreements, *i.e.,* contracts, contain terms, provisions and conditions concerning Plaintiff's obligation to provide trucking services and, concomitantly, obligations by Defendants to pay a sum certain for the trucking services.

86. The contracts are all valid and enforceable, both oral and written agreements, between Plaintiff and Defendants.

87. The contracts which have been negotiated, in accordance with both standard industry protocol and specific as between Sonix and Michael, Pegasus and the other Company Defendants are valid and binding.

88. Plaintiff completely performed all obligations required of Plaintiff under the terms and provisions of the contracts by providing all the negotiated, expected and agreed upon trucking services to the Defendants.

89. Defendants, by continually, willfully, and repeatedly, failing to pay Plaintiff for the completed trucking services provided to and for the benefit of Defendants, breached the Agreements, intentionally, willfully, and fraudulently, all to the detriment and damage of Gutman and Sonix.

90. As a direct and proximate result of breaches of the aforementioned invoices and contracts, Plaintiff has sustained significant damages, in an amount to be determined at trial, in an amount no less than at least $752,850 and likely much more given other measures of damages foreseeably caused by Michael's and the other Defendants repeated and significant breaches.

### COUNT III
### UNJUST ENRICHMENT
### (Defendants)

91. Plaintiff repeats, reiterates and realleges each and every allegation contained in the preceding paragraphs, 1 through 90, as if each of them were set forth fully herein.

92. Defendants wrongful, unjustified, and unlawful acts, including and especially those concerning failing and continually refusing to pay for the trucking services provided and fully completed by Plaintiff have resulted in Michael's and Defendants' unjustified, unlawful, and unacceptable receipt of value from the Plaintiff in the amount of at least $752,850.

93. Plaintiff conferred an unwarranted, unjustified, and unearned benefit on Defendants, and Plaintiff has not yet been adequately compensated.

94.     By sole reason of Michael's and the other Defendants' wrongful, unjustified, and unlawful acts, Defendants were significantly enriched, at Plaintiff's direct, sole and significant expense, and it is against equity and good conscience to permit Defendants to unlawfully retain the money paid.

95.     Plaintiff is entitled to recover the amount by which Michal and the other Defendants were unlawfully and unjustly enriched by virtue of Defendants wrongful acts, in an amount to be determined at trial, an amount no less than at least $752,850 and likely much more, and likely much more given, among other ill-received rewards and benefits, the unwarranted, unjustified, unearned and undeserved discounts and other write-offs Michael forced, through threats, intimidation and other bullying tactics, Sonix to provide himself and the other Defendants, on pain of not paying any already outstanding, due and owing invoices.

**COUNT IV**
**FRAUD**
**(Michael Fallas)**

96.     Plaintiff repeats, reiterates and realleges each and every allegation contained in the preceding paragraphs, 1 through 95, as if each of them were set forth fully herein.

97.     Michael made dozens of material representations to Plaintiff, which he knew to be false at the time such statements were made to Plaintiff, concerning the terms, provisions, and other pertinent details, as well as that he would make the payment for the trucking services ("Knowingly False Statements and Intentional Misrepresentations").

98.     Key among the Knowingly False Statements and Intentional Misrepresentations were the fact that Pegasus was in sound financial health and that Michael would personally be responsible for and guarantee, himself, to pay all outstanding invoices submitted by Sonix for trucking services rendered to Michael, Pegasus and any and all of the AKAs.

99. Gutman and others at Sonix specifically, explicitly, significantly, and materially relied upon the personal promises and individual commitments made by Michael, both to enter into the business arrangement, as an initial matter, Michael's use of and explanation to Gutman and to others at Sonix as to the purpose, use and role of the AKAs, and then to continue providing trucking services when Michael and Defendants first made late payments to Sonix.

100. Michael made the Knowingly False Statements and Intentional Misrepresentations for the sole purposes of deceiving Plaintiff into, including but not limited to, relying on the terms and provisions of the discussed, negotiated, contemplated and promised agreements, including that Plaintiff would be paid timely for all trucking services, encouraging Plaintiff to continue providing the trucking services to the Defendants, and believing the facts as fabricated by Michael, a leader in his industry and expert in this field, and trusting Michael to personally make payments to the Plaintiff for the trucking services, just as Michael had repeatedly promised.

101. Plaintiff justifiably and reasonably relied upon Michael's explanation, statements, promises and commitments, given the deception, cunning, cruelty, sophistication and conspiracies designed and implemented by Michael (with the aid and support of his authorized representatives, his relationship with Jacob and the other Defendants), on the Knowingly False Statements and Intentional Misrepresentations as to the invoices, agreements, and trucking services.

102. As a direct and proximate result of the fraud committed by Michael (with the aid and support of his authorized representatives, his relationship with Jacob and the other Defendants), through the dozens of Knowingly False Statements and Intentional Misrepresentations, over a period of no fewer than five months, Plaintiff has sustained significant money damages and other injuries, amounts and categories to be determined at trial, in an amount

no less than at least $752,850 and likely much more, in addition to other compensatory damages, punitive damages, attorneys' fees, and costs.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully request that this Court enter judgment in favor of Plaintiff and against Michael, Pegasus and the other Company Defendants by finding,

*Account Stated:*

Declaring Defendants are indebted to Plaintiff, as Plaintiff has established an **account stated** claim against Defendants for the full amount of the approximate 120/195 invoices, timely sent by Sonix and received without issue, objection or other complaint by any of the Defendants, at any time over the past 13 months or more, in violation of New York law, *and* awarding Plaintiff damages in an amount of no less than an amount of at least $752,850 and likely much more,

*Breach of Contract*:

Declaring Defendants in **breach of their contracts (*i.e.,* the agreements)** with Plaintiff, in violation of New York law, *and* awarding Plaintiff damages under the agreements in an amount of no less than an amount of at least $752,850 and likely much more,

*Unjust Enrichment:*

Declaring Defendants were **unjustly enriched** by and through the services rendered to them by Plaintiff, *and* awarding Plaintiff damages, in an amount to be determined at trial, not less than an amount of at least $752,850 and likely much more,

*Fraud:*

Declaring Michael **committed fraud** against Plaintiff, in violation of New York law, and awarding Plaintiff damages, in amounts and categories to be determined at trial, no less than an amount of at least $752,850 and likely much more, in addition to other compensatory damages, punitive damages, attorneys' fees, and costs, *and*

awarding to Plaintiff all such other relief, award and damages as the Court deems just and proper under the facts and circumstances underlying this action.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues of fact and all damages herein.

Dated: November 4, 2022
      Brooklyn, New York

                                        Respectfully submitted,

                                        BRUCK LLP

                                        By: <u>/s/ Yair Bruck</u>

                                        Yair Bruck, Esq.
                                        YB@BruckLLP.com
                                        1207 East 34th Street
                                        Brooklyn, NY 11210
                                        (212) 593-9090 (phone)
                                        (212) 644-6667 (facsimile)

                                        *Attorneys for Plaintiff*
                                          *Sonix Carriers Inc.*